SPURLOCK *vs.* HUNTER'S HEIRS.

APPEAL FROM THE COURT OF THE SIXTH JUDICIAL DISTRICT, FOR THE
PARISH OF RAPIDES, THE JUDGE THEREOF PRESIDING.

Where the purchaser of a tract of land sells *during* the pendency of a suit
to evict him, without recourse in warranty, and divests himself of all title
before final judgment of eviction, *he is without interest*, and cannot claim
of his vendor, a diminution of the price which he contracted to pay.

When the surety in an injunction is before the court on appeal, no judg-
ment for interest or damages can be pronounced against him on dissolv-
ing the injunction.

The act of 1831, relative to injunctions, does not say from what date the
interest is to run, when they are dissolved, but in this case *it is computed*
*from the time the judgment was rendered in the court below.*

This suit commenced by injunction. The present plaintiff
alleges, that in October, 1827, he purchased with full war-
ranty, from one Stephen Tippett, an undivided half of a tract
of 352 arpents of land, for which he gave his three several
obligations to pay fifteen bales of cotton each, and payable on
the 15th March, 1829–30 and 31. That two of these cotton
notes have been paid, and the other transferred to one P. H.
Hunter, now deceased, who instituted suit thereon, and pro-
secuted the same to final judgment. See the case in 3
*Louisiana Reports,* 97.

He further shows, that at the time said suit was pending,
he was also sued for the land in question, by one Wall, and
was in great danger of eviction, which he pleaded in defence
of the suit on the cotton note. That Wall has obtained final
judgment, and evicted him from about 115 or 120 arpents of
the land. See the case in 10 *Louisiana Reports,* 339. That
notwithstanding all this, Hunter's heirs have taken out execu-
tion, and are about coercing the payment of their judgment,
which he prays may be enjoined perpetually.

He further shows and alleges, that in consequence of said
eviction, he is entitled to have the obligation sued on by
Hunter cancelled, as Tippett from whom Hunter received it,

sold to him with full warranty, and neither him or his
assignee are entitled to receive its amount.

The defendants pleaded a general denial, and admit their
ancestor was the assignee of Tippett, from whom he received the obligation sued on; but they expressly deny that the plaintiff has any right to withhold payment, as the suit between him and Wall was merely an action of boundary, and did not operate an eviction. That there is another instalment of the price not yet paid, which is sufficient to defray all expenses and damages occasioned by the suit of Wall.

They further aver, that the plaintiff was not the owner or possessor of the land, at the time said suit of Wall was decided, but had sold all his interest therein to one William J. Morris without recourse in warranty; and thereby barred himself of any claim in warranty, on account of his purchase from Tippett; and also lost any claim for indemnity on account of eviction. That he sold to Morris, expressly exempting himself from any claim or recourse in warranty, and in reference to such decision as the Supreme Court might render in the case of Wall against Spurlock. Upon these pleadings and issues the cause was tried.

The evidence showed that the sale from Tippett to Spurlock in 1827, is of " an undivided half of a tract of land, situated and fronting on Little Lake, adjoining lands of Overton and others, containing 352 arpents, being the same acquired from his father, Stephen Tippett, &c." Tippett warrants the premises " against the claim of himself and heirs, and of all persons claiming under or from him, and against the claims of all persons whatever, etc."

In June, 1835, after the suit of Wall *vs.* Spurlock for a part of this land had been decided in favor of Wall in the District Court, pending the appeal, Spurlock sells all his right, title, interest and claim to the land, to William J. Morris for four thousand dollars, giving the same description as in the deed from Tippett to him ; and he " expressly declines and absolutely refuses to warrant it against the claim of any other person whatsoever, etc."

It further appeared that Wall's judgment took about 115

WESTERN DIST.
Oct. 1838.
──────────
SPURLOCK
vs.
HUNTER'S HEIRS.

arpents of the land, as the plaintiff had claimed it, but there was evidence to show that Tippett and Spurlock had had it improperly located, and that this judgment only restored ·the respective claims to their true location and boundaries. But, the plaintiff contended that he had been evicted of these 115 arpents, and claimed a diminution of the original price under the sale from Tippett to him.

The judgment which Hunter had obtained, was for five hundred and seventy-two dollars, with five per cent. interest, from the first of March, 1830, until paid ; which sum was ordered to be deposited in court, to abide the decision of the suit of Wall and Spurlock.

The district judge rendered judgment, perpetuating the injunction, from which the defendants appealed.

*Hyams* for the plaintiff.

I. The defendants oppose the legality of the injunction on the ground that Spurlock sold *without warranty* for a large sum, and therefore has no interest in opposing this payment, because if he had paid Hunter he could not have received back the amount, having no interest in the eviction of his vendee, and quotes 3 *Martin, N. S.*, 421.. *Pothier, Vente* 98. *Digest l.* 21, *tit.* 2, *l.* 61, 71.

I will meet these objections in detail.

1. Spurlock was the party evicted *on the record, and in fact* although he did sell to Morris pending *the appeal,* and without warranty any right or title he had to the land ; but whether he was or not, he had an interest in not paying Hunter because he had not received full value. If he had received full value by having had a good title to his land, so as to have been able to have sold *with warranty,* he would have sold for many thousand dollars more than what Morris gave him for the *chance* of a reversal by the Supreme Court of the judgment of eviction against him by the District Court.

2. Tippett who sold to Spurlock with warranty, a tract of land which ultimately proved to be very valuable, but which to the plaintiff here (Spurlock) was lost for want of a good title in Tippett, cannot certainly complain that Spurlock gained

something at the last moment by selling a mere chance. On the contrary, Spurlock is the sufferer for want of a good title, and has a right to refuse to pay Tippett or his assignee, Hunter, which is the same thing.

3. Spurlock had a clear legal right to retain a portion of the purchase money, when the suit of eviction of Wall was instituted against him, until the decision of that suit, and the judgment of the Court in the case of Hunter *vs.* Spurlock, 3 *La. Rep.* 97, sanctified that right and is *res judicata* and conclusive. The eviction has made the contingent deposit revert to him. Now what act of his with third persons can give Hunter any greater legal or equitable claims upon him than he had at the day of the rendition of the judgment in the case of Hunter *vs.* Spurlock ?

II. The facts of the case do not come within the principle said to be laid down by the Supreme Court in 3 *Martin, N. S.,* 421 ; and *Pothier,* and the *Digest;* but even the principle itself is controverted by *Troplong, Vente,* 429, who says the *Digest* is misquoted by *Pothier;* and also by *Duranton, vol.* 16, *No.* 276, who differs with *Pothier.* That doctrine would certainly be a singular one which only benefited the party who is substantially in fault, to wit, Tippett, who sold to us *with* warranty, but with a *bad* title.

*Winn,* for the defendant, insisted that Spurlock was not evicted by the judgment in the case of himself and Wall, for there was still land enough for Spurlock according to his original purchase from Tippett, if it was properly located. That suit was not in fact a petitory action, but one of boundary, and although Wall recovered, yet it was not an eviction, as it only settled the boundaries between them. It only changed Spurlock's boundary.

2. The suit of Hunter was on the second instalment due from Spurlock to Tippett, leaving still a third unpaid, which was sufficient to cover all the damages the plaintiff could sustain by the judgment of Wall. He should resort to this one and claim diminution in consequence of his eviction, if he has sustained any real loss.

3. But Spurlock was not, in fact, evicted. He had sold pending the appeal, to Morris, without any recourse on him in warranty for a good price. This sale was made before the decision of the suit of eviction, and consequently Spurlock was without interest in the result. He cannot, therefore, set up any claim for a diminution of price, and has no right to oppose the judgment of the defendants. *Pothier de Vente,* *No.* 97. 3 *Martin, N. S.,* 422.

*Bullard, J.,* delivered the opinion of the court.

The present plaintiff having been sued by the ancestor of the defendants, pleaded that the obligation upon which the suit was brought, was given for a part of the price of a tract of land. That he was in danger of eviction of a part of the land, in consequence of an action of boundary instituted by one Wall, and then pending; and that if he should lose a part of the land for which the note was given, he would be entitled to a diminution of price. Judgment was finally rendered in favor of the plaintiff for the amount of the note, but the defendant was ordered, in conformity to article 2536 of the code, to deposit the amount thus recovered with the clerk of the court, and in default of his making such deposit, that the land be seized and sold by the sheriff to satisfy the judgment, and that he deposit the same with the clerk.

The defendant in that case having failed to deposit the money, the sheriff proceeded, the land was seized, sold at a year's credit, and purchased by the defendant himself, who gave a twelve months' bond. An execution having issued on this bond, the sheriff was arrested by an injunction obtained by him on the following allegations among others, to wit; that since the rendition of the judgment in favor of Hunter, the case of Wall *vs.* Spurlock had been finally decided by the Supreme Court, and he had been evicted of about one-third of the land sold to him, whereby he is entitled to have the note sued on by Hunter cancelled, etc.

The defendants, in answer, deny that the plaintiff in the injunction has been evicted of any part of the land purchased by him, alleging that the action instituted by Wall was one

of boundary alone. They further allege, that the plaintiff is no longer the owner of any part of the land, and that he had sold the same to one Morris without any warranty, and that thereby he is debarred from setting up any claim for warranty himself, and has lost any claim to indemnity on account of the supposed eviction.

The injunction was perpetuated, and the defendants appealed.

The original judgment certainly contemplated that the money should be brought into court to abide the final decision of the case of Wall *vs.* Spurlock, and it does not appear that the twelve months' bond was to be considered as money, by agreement of parties. But as the pleadings in this case present the question as if the money were in court, and as if the court was now called upon to say whether the plaintiff has a right to withdraw any part of it on account of the eviction, we see no objection to deciding in that form upon the rights of the parties, instead of dissolving the injunction, and leaving the question open until the money shall be deposited, according to the judgment in the first instance.

The record shows, that pending the suit of Wall *vs.* Spurlock, the plaintiff sold the land in controversy to Morris, expressly exempting himself from all obligations as warrantor, except as against himself and his heirs, and the purchaser declared in this act of sale, that he was well acquainted with the title, and aware of the danger of eviction, and was contented to take the land with such limited warranty.

It is clear, therefore, that Spurlock has not been evicted. Having divested himself of title before the final judgment in that case, if he had sold with warranty, the eviction of his vendee would have entitled him to a diminution of price, perhaps, on a recourse in warranty against his vendor, but having sold without any warranty, his vendee cannot maintain any action against him, and he is without interest. 3 *Martin, N. S.,* 422. *Pothier, Vente* 97.

But it is urged on the other side, that this doctrine of Pothier is successfully combatted by more modern commenta-

Where the purchaser of a tract of land sells during the pendency of a suit to evict him, withoutrecourse in warranty, and divests himself of all title before final judgment of eviction, *he is without interest,* and cannot claim of his vendor a diminution of the price which he contracted to pay.

SPURLOCK
*vs.*
HUNTER'S HEIRS.

tors on the Code Napoleon, and we are referred to Duranton and Troplong.

The general principle laid down by Pothier is, that the eviction suffered by the successor of the purchaser, gives rise to the action of warranty only so far as that eviction interests the purchaser or his heirs, and he supposes the case of a donation, and the eviction of the donee, and concludes that as the donor is not bound by any warranty, the eviction suffered by the donee interests neither him nor his heirs, and consequently that he cannot exercise the action of warranty against his vendor.

*Paulus,* it is true, thinks that when the purchaser has given the property purchased as a dowry to his daughter, and she is evicted, the father ought to have the action of warranty, because he has an existing interest that his daughter should not be without a dowry, even in case he would not be entitled to a return of the dower, in the event of her death during the marriage.  *Digest lxxi., t. ii., law* 71.

The reason given by Paulus, to wit, that the donor, in the case supposed, has still a subsisting interest, would seem to admit the general principle that when the purchaser has no longer any interest, he cannot exercise the action.

Duranton and Troplong maintain the opinion of Paulus, in opposition to that of Pothier, in the single case of a donation ; they appear to think that the donee has an action of warranty against the vendor of the donor.  But that is not the case now before the court.  The question is not whether Morris, who purchased at his risk, has, under the terms of his deed, any subrogation to the warranty of Spurlock, but whether Spurlock, after parting with all his right, title, and interest, can exercise any action on account of the eviction of his vendee.  Neither of the authors cited appear to controvert the position in relation to a sale.

When the surety in an injunction is before the court on appeal, no judgment for interest or damages can be pronounced against him on dissolving the injunction.

The injunction, in our opinion, ought to have been dissolved, on the merits, and it is our duty to pronounce such judgment as ought to have been rendered below.  But the surety on the injunction bond is not before us, and no judgment for interest or damages can be pronounced against him.

The act of 1831 (page 102, section 3,) makes it the duty of the court, in case the injunction be dissolved, to condemn the plaintiff and surety *in solido* to pay interest at the rate of ten per cent. per annum, and damages not exceeding twenty per cent., unless damages to a greater amount are proved. The act does not say from what date the interest is to run, and in the present case we think it should run from the time judgment was given below on the injunction. There is no sufficient evidence of special damages.

It is, therefore, ordered, adjudged, and decreed, that the judgment of the District Court be avoided and reversed ; and proceeding to render such judgment as ought, in our opinion, to have been given below, it is further adjudged and decreed, that the injunction be dissolved, and that the defendants recover of the plaintiffs ten per cent. interest on the amount due upon the twelve months' bond from the 22d of May, 1838 ; and it is further ordered, that the sheriff proceed to make the money, and pay it over to the defendants, and that the plaintiffs pay costs in both courts.

*Western Dist.*
*Oct. 1838.*

The act of 1831 relative to injunction, does not say from what date the interest is to run, when they are dissolved, but in this case it is computed from the time the judgment was rendered in the court below.